[Civ. No. 66581. Second Dist., Div. One. Aug. 4, 1983.]

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES LOCAL 685, AFL-CIO, Plaintiff and Appellant, v. COUNTY OF LOS ANGELES, Defendant and Respondent; RODOLFO VALDEZ BERUMEN, Intervener and Respondent.

**COUNSEL**

Reich, Adell & Crost, Hirsch Adell and Alexander B. Cvitan for Plaintiff and Appellant.

John H. Larson, County Counsel, and Alan K. Terakawa, Deputy County Counsel, for Defendant and Respondent.

Joaquin G. Avila, Morris J. Baller, John E. Huerta and Ana I. Segura for Intervener and Respondent.

OPINION

SPENCER, P. J.—

INTRODUCTION

Petitioner American Federation of State, County and Municipal Employees Local 685, AFL-CIO appeals from a judgment denying its petition for a writ of mandate, wherein petitioner sought to compel respondent County of Los Angeles to make fiscally related reductions in rank of deputy probation officers in the inverse order of seniority.

STATEMENT OF FACTS

Due to the economic exigencies of a reduced budget for fiscal year 1981, the department of probation was required to develop a surplus plan for the removal of certain personnel from the department's payroll. An initial plan would have called for the reduction from level II to level I of all deputy probation officers hired on or after April 16, 1973, in inverse order of seniority with no exemptions. Apparently, Michael Ishikawa, respondent's affirmative action compliance officer took exception to the plan, in that it showed an adverse impact on Hispanic employees and would detrimentally affect the department's ability to adequately serve the non-English-speaking client population. As a result, the plan was returned to the probation department for revisions.

The revised budget curtailment plan provided for the reduction in rank of all level II deputy probation officers hired on or after October 20, 1972, and included exemptions for 69 certified bilingual deputy probation officer positions.

Although the probation department had recognized the need for bilingual, particularly Spanish-speaking, deputy probation officers as early as 1971 and had taken steps to provide adequate bilingual services for the department's client population, a complaint in 1977 prompted County Supervisor Edelman to order the development of a plan to increase the Spanish-speaking deputy probation officer staff. The criteria utilized to determine the department's need for bilingual Spanish-speaking employees were: (1) the percentage of Spanish-surnamed persons served by the department, and (2) a survey of those persons certified bilingual in Spanish and occupying positions certified as requiring such skills on a continuing and frequent basis. Spanish-speaking bilingual certification has never been limited to or favored Hispanics per se. No comprehensive study of the extent of the need had

ever been done, although it was widely recognized in the department that the need was continually increasing. In some field offices served by level II deputies, 30 to 40 percent of the clientele require bilingual services.

Without the budget curtailment plan bilingual exemption, the department's capacity to serve non-English-speaking juvenile wards in various county institutions would be severely impaired. Further, 38 deputy probation officer field service positions of demonstrated bilingual need would have been filled by noncertified bilingual officers in that no level I deputy probation officers are assigned to field services. Twelve of the 69 persons exempted were non-Hispanic; some of the exempted positions required bilingual skills other than Spanish.

In seeking approval of the county director of personnel for the exemptions, pursuant to civil service rule 19.05, Acting Chief Probation Officer Kenneth Fare wrote: "The Department has historically established a need to provide bilingual services to its Spanish-surnamed clients. This need was further identified and upheld in the matter of Romano, et al . . . . In 1977 at the request of a Board member, the Department made a commitment to increase its number of Spanish speaking, case-carrying Deputy Probation Officers in field offices . . . . The formula used, at that time, was approximately 2.86% Spanish surnamed caseload equalled (1) Deputy position in a given field office . . . . Computing [a work force reduction of 25 percent] into previous formula established a projected current need of 97 Spanish speaking case-carrying Deputy Probation Officers in field offices . . . . [E]xemptions are needed to maintain this level of staffing inasmuch as a number of these were to be demoted; . . . . A part of the aforementioned plan specified . . . that a standard of 18% of staff in the Detention and Residential Treatment Services Bureaus be Spanish speaking, given the uniformity of the ethnic breakdown of the ward population in their facilities . . . ."

On July 24, 1981, petitioner and respondent entered into a memorandum of agreement. Article 16 thereof sets forth a commitment to affirmative action in reassignments and promotions. Section 1, paragraph B states, with respect to reassignment: "If the client population of a work location contains over 5% of one of the [protected] classes . . . , one out of every three vacant positions in said location shall be designated to be filled by voluntary bid by an employee in that class." Paragraph E provides, "Vacancies not filled in accordance with the criteria listed in Paragraphs B and D will be filled on the regular seniority basis." However, paragraph L provides in part: "In assigning employees to vacant positions, Management shall select the employee in the applicable protected class with the greater seniority

. . . , unless the position requires a special skill such as the ability to speak Spanish." Finally, Article 30 of the memorandum expressly states, "Layoff procedures shall be followed according to appropriate Los Angeles County Civil Service Rules."

CONTENTIONS

I

Petitioner contends the trial court erred in finding that the civil service rules permit exemptions for certified bilingual employees to the order of reductions.

II

Petitioner further contends the trial court erred in ruling petitioner was estopped from challenging bilingual ability as a legitimate basis for exemption from the usual rule of seniority.

III

Petitioner asserts the trial court erred in ruling the exemptions did not deprive those union members, who had seniority but were demoted as a result of the exemptions, of their right to equal protection of the laws.

IV

Finally, petitioner avers the trial court erred in finding that union members were not denied their right to procedural due process notice and hearing prior to demotion.

DISCUSSION

I

There is no merit to petitioner's contention the trial court erred in finding that the civil service rules permit exemption for certified bilingual employees to the order of reductions. As petitioner concedes, the interpretation of civil service rules is purely a question of law. (Cf. *Wilson* v. *County of Santa Clara* (1977) 68 Cal.App.3d 78, 84 [137 Cal.Rptr. 78].) Accordingly, we begin with the well-settled rule of statutory construction that various parts of a statutory framework must be harmonized by considering each portion in the context of the whole. (*Moyer* v. *Work-*

*men's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

Civil service rule 19 governs county layoffs and reemployment. Rule 19.01 provides authority for the appointing power to "lay off *or reduce*" (italics added) an employee for reasons of economy, lack of work or lack of adequate positions in a particular class. Rule 19.03 provides generally for the order of layoff *or reduction* of permanent employees as follows: "Employees . . . shall be laid off or reduced on the basis of inverse order of seniority in County service . . . ." Rule 19.06 provides authority for the appointing power to make reductions to lower level positions in lieu of layoffs when deemed in the best interests of the service. Rule 19.06 further requires that reductions be made in the same order (inverse seniority) specified in rules 19.02 (governing employment status generally) and 19.03 (governing permanent employees specifically). Similarly, rule 19.07 provides that an employee may *request* reduction in lieu of layoff.

Finally, rule 19.05 provides *exceptions* to the general order, reading:

"Where the appointing power deems it to be for the best interest of the service, the appointing power may retain an employee despite the order of layoff provided in Rule 19.03.

"The best interest of the service may be defined on the basis of such considerations as:

"(a) special qualifications possessed by only the employee(s) retained important to performance of the department's work.

"(b) loss of the employee's skills on a particular assignment would adversely affect public welfare.

"(c) an employee's distinctly superior documented work performance.

"The appointing power shall submit written justification for such retention to the Director of Personnel and obtain the latter's concurrence.

"Where the appointing power deems it to be in the best interests of the service the appointing power may combine with the concurrence of the Director of Personnel classes of the same grade into a single group for the purpose of layoff or reduction."

It is apparent that rule 19 sets forth a comprehensive scheme governing the circumstances, the order (by employment status and within the category

of permanent employee), and exceptions to the general order, in which layoffs and *reductions* are to be made, for *each part* of rule 19 concerned with layoffs makes reference also to reductions. Indeed rule 19.05 makes mention of reductions not only in the body of the text but by *reference* to rules 19.02 and 19.03, which themselves apply to layoffs *and* reductions.

Nevertheless, petitioner makes much of the absence of the phrase "or reductions" from the initial sentence of rule 19.05. ■ Ordinarily, a court is required to follow the plain and obvious meaning of a statute's words; however, the literal construction of a provision will yield to the manifest purpose which appears from the whole. (*Smith* v. *Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 412, 418 [128 Cal.Rptr. 572].) Given the express reference to reductions in the concluding paragraph of rule 19.05 and in the text of rule 19.03, as well as the overall scheme of rule 19, which permits reductions in lieu of layoffs and exceptions thereto *only* in the best interests of the service, any construction which permitted an exception to the order of layoff but not to the order of reduction would indeed be absurd. Subparagraph (b) of rule 19.05 provides, as a basis for determining an exception is in the best interest of the service, that "loss of the employee's skills on a particular assignment would adversely affect public welfare." Clearly, such a situation could result as readily from a reduction in position (and consequently ineligibility for the assignment) as from layoff. ■ Consequently, the phrase "despite the order of layoff provided in rule 19.03" reasonably may be construed, in light of the whole, as extending to the order of reduction provided therein also. Finally, the above interpretation is that which the county's department of personnel has given the rule. While not controlling, such an administrative construction is entitled to great respect. (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564].)

Petitioner further intimates respondent failed to follow rule 19.05 in creating the exemptions, in that the record contains no evidence the exempted employees solely possessed "special qualifications . . . important to performance of the department's work" per subparagraph (a). The suggestion merits little discussion. The exempted persons are the only employees possessing *certified* bilingual skills; certification attests to *sufficient* language proficiency to serve client needs. Respondent was entitled to rely on that measure of skill, rather than speculate as to the possible bilingual competency of employees who had not sought or been awarded certification. The *importance* of bilingual proficiency to the department's work is not in dispute.

## II

Petitioner further contends the trial court erred in ruling that petitioner was collaterally estopped from challenging bilingual ability as a legitimate basis for exceptions to seniority. While we agree, we deem the error harmless.

The trial court based its collateral estoppel ruling on the final judgment rendered in The Matter of the Appeal of Ronald Romano et al., before the civil service commission. ■ The doctrine of collateral estoppel prevents relitigation of issues actually and necessarily decided in a prior action, civil or criminal, which resulted in a determination on the merits if the party against whom the bar is asserted was a party or in privity with a party to the prior proceeding. (*People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622]; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439].) Respondent failed to establish that petitioner, the party against whom the bar is asserted, was in privity with any party to the Romano proceeding; nor, from the record, does it appear that fact *could* be established. It is undisputed that petitioner was not a *party* to that proceeding. Accordingly, it was error for the trial court to apply the doctrine of collateral estoppel.

■ However, the record is replete with evidence documenting the need for bilingual deputy probation officers; indeed, petitioner conceded the point. Further, there is uncontradicted evidence that each certified bilingual specialist occupies a position with a demonstrated continuing need for his or her services, and that the need would not be met but for the exemptions. Finally, the memorandum of agreement, binding on petitioner, expressly recognizes bilingual skill as a legitimate exception to the general governing rule of seniority. As a consequence, we view the error as harmless.

## III

■ Petitioner asserts the trial court erred in finding that those union members, who had seniority but were demoted as a result of the exemptions, were not denied the equal protection of the laws. We disagree.

The gravamen of petitioner's assertion is that the bilingual skill exemptions to the usual order of demotion were classifications based on race or ethnic origin and, hence, violated the Fourteenth Amendment of the federal Constitution and article I, section 7 of the California Constitution. In support thereof, petitioner indulges in a gross mischaracterization of the evidence, stating, "It is undisputed that the County Affirmative Action Com-

pliance Officer informed local 685 that the Spanish speaking exemptions were a means of discriminating in favor of Hispanics." In truth, the compliance officer indicated *his view* that the exemptions were a means of avoiding a disproportionately adverse effect on Hispanics from the reductions.

Whatever the compliance officer's views may have been, there is a wealth of evidence documenting the need for bilingual services, the loss of certified bilingual personnel from positions of certified need which would result from nonexempt reductions, the ethnicity-neutral means by which certification was achieved solely on the basis of language proficiency, the presence of essential non-Spanish-speaking bilingual specialists among those exempted and the number of non-Hispanic bilingual specialists exempted. There is no evidence that any individual was denied certification on the basis of race or ethnic origin. Moreover, it is undisputed that *all* certified bilingual deputy probation officers were exempted. Accordingly, there is ample evidence to support the trial court's finding that the exemptions were not prompted by an intent to discriminate, an essential requirement under the Fourteenth Amendment of the federal Constitution. (*Washington* v. *Davis* (1976) 426 U.S. 229, 239 [48 L.Ed.2d 597, 607, 96 S.Ct. 2040].)

Relying on *Crawford* v. *Board of Education* (1976) 17 Cal.3d 280 [130 Cal.Rptr. 724, 551 P.2d 28], petitioner argues that the trial court nevertheless erred in failing to find a denial of equal protection under the state Constitution from the presence of a discriminatory *effect. Crawford* cannot reasonably be read as petitioner desires. *Crawford* recognizes public education as a "fundamental interest" for equal protection purposes under the state Constitution, akin to an individual's fundamental right to trial by a jury of his or her peers. With respect to such a fundamental right, *Crawford* holds that public officials have a duty to attempt to alleviate discriminatory effects, even though resulting from a facially neutral policy. (*Id.,* at p. 297; see also *People* v. *Superior Court (Dean)* (1974) 38 Cal.App.3d 966, 972 [113 Cal.Rptr. 732].) Public employment is not a fundamental right. (*Bishop* v. *Wood* (1976) 426 U.S. 341, 345 [48 L.Ed.2d 684, 690, 96 S.Ct. 2074].) In sum, we perceive no error in the trial court's finding that petitioner's members were not denied equal protection.

## IV

■ Petitioner's averment the trial court erred in finding that union members were not denied procedural due process of notice and a hearing prior to demotion lacks merit. Public employment generally involves a property interest entitled at least to minimal procedural due process protection. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 212 [124 Cal.Rptr. 14, 539

P.2d 774].) However, the extent of the protected interest or entitlement (i.e., the terms and conditions of employment) is governed purely by statute. (*Markman* v. *County of Los Angeles* (1973) 35 Cal.App.3d 132, 134 [110 Cal.Rptr. 610].)

Pursuant to article XI, section 4, subdivision (f) of the California Constitution and article IV, section 35 of the county charter, the county civil service commission promulgated rules governing the terms and conditions of county employment, including procedures for layoff or reduction in lieu thereof for reasons of economy or lack of work. These rules, particularly rule 19, therefore establish the extent of county employees' protected property interest. Given the text of rule 19, discussed at length, *ante*, it is clear that no county employee has a legitimate claim of entitlement to be free from layoff or reduction in position when reasons of economy or lack of work eliminate a need for the position. Due process does not demand a preremoval hearing in the absence of a protected interest or when the circumstances precipitating removal are general to the employing entity. (*California Sch. Employees Assn.* v. *Pasadena Unified Sch. Dist.* (1977) 71 Cal.App.3d 318, 323 [139 Cal.Rptr. 633].) Hence, the trial court's ruling is correct.

The judgment is affirmed.

Hanson, (Thaxton), J., and Dalsimer, J., concurred.