Jonathan WEISBUCH, Plaintiff–Appellant,

v.

COUNTY OF LOS ANGELES, a Public Entity and Political Subdivision of the State of California; Robert C. Gates; Yvonne B. Burke; Gloria Molina; Edward D. Edelman; Michael D. Antonovich; Deane Dana, Defendants–Appellees.

No. 94–56497.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1996.

Decided July 11, 1997.

Laurence B. Labovitz, Los Angeles, CA, for plaintiff-appellant.

Kevin C. Brazile, Deputy Counsel, County of Los Angeles, Los Angeles, CA, for defendants-appellees.

Before: FLETCHER, BEEZER and KLEINFELD, Circuit Judges.

Opinion by Judge KLEINFELD; Partial Concurrence and Partial Dissent by Judge FLETCHER.

KLEINFELD, Circuit Judge.

We affirm the dismissal of a claim by a demoted medical director that his change in rank was unconstitutional retaliation for protected speech.

## FACTS

■ The complaint was dismissed for failure to state a claim upon which relief could be granted, under Federal Rule of Civil Procedure 12(b)(6). We therefore determine whether, if the factual averments of the complaint were proved, they would establish a cause of action. *National Wildlife Federation v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995); *Argabright v. United States*, 35 F.3d 472, 474 (9th Cir.1994). The description of events below is a summary of the averments of the complaint.

Dr. Weisbuch was employed by the County of Los Angeles as Medical Director, within the Department of Health Services. Robert C. Gates, the Director of Health Services, was his supervisor and acted as appointing authority of personnel within the department. In 1993, Dr. Weisbuch told Mr. Gates that a number of people felt that the leadership of Mr. Gates's department "was not adequately listening to 'medical opinion' before decisions being made in the Department of Health Services." Dr. Weisbuch said that the medical leadership group wanted to write a letter to the County Board of Supervisors telling them that Mr. Gates's departmental leadership was not listening to them as it should, and that this had implications for a managed care program.

Mr. Gates responded by changing Dr. Weisbuch's position from Medical Director to Associate Medical Director. Mr. Gates told Dr. Weisbuch that he would be demoted from Medical Director to Associate Medical Director "because of his efforts to inform the Board of Supervisors of the opposition to Department of Health Services management in failing to consider qualified medical opinion in the decision-making process."

Dr. Weisbuch asserted a claim under 42 U.S.C. § 1983, as well as a California state claim, on the theory that he had not been given due process when his "property interest in his employment as Medical Director" was taken away from him. Additionally, Dr. Weisbuch claimed that his right to free speech was abridged by his demotion for expressing his opinion and proposing to express it to the Board of Supervisors. Additional state law claims were asserted as well. The members of the County Board of Supervisors, as well as Mr. Gates, were named as defendants, on the theory that they subsequently became aware of what Mr. Gates had done, should have responded by ordering Mr. Gates to reinstate Dr. Weisbuch as Medical Director, and did not.

Because our task is limited to deciding whether the averments of the complaint states a cause of action, we have no occasion to decide whether the averments are true. We also intimate no judgment about whether Dr. Weisbuch or Mr. Gates was right about the degree of deference given or which should be given to medical opinion in the department. Dr. Weisbuch's arguments on appeal are limited to his federal constitutional due process and free speech claims, so those are the only issues before us.

## I. Due Process.

■ Dr. Weisbuch's due process claim was correctly dismissed, because, as a matter of law, Dr. Weisbuch had no property right in his position as Medical Director. A government employee is not entitled to due process based on deprivation of property, when removed from a position, unless the employee has "a legitimate claim of entitlement" to the position. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The position holder needs "an individual entitlement grounded in state law, which cannot be removed except 'for cause,'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982), in order to establish a deprivation of due process. Under California law, county charters, rules and regulations generally de-

termine whether there is such an entitlement. Cal. Const. art. 11, § 4(f); *American Fed'n of State, County & Mun. Employees Local 685 v. Los Angeles County,* 146 Cal. App.3d 879, 194 Cal.Rptr. 540, 546 (1983).

The governing regulations establish that Dr. Weisbuch can claim no entitlement to his position. Los Angeles County Civil Service Rule 15.01 provides that the assignment of an employee to a "position" or "from one position to another," "is a matter of departmental administration." Under Rule 15.03(A), some employees, in carefully designated classes, are entitled to hold onto the "same rank" and the same "grade" when their classification is changed. Under Rule 15.03(B), other employees are entitled to retain their "grade," but do not enjoy the "same rank" proviso of Rule 15.03(A) employees:

> **15.03 Change of classification.** A. Whenever it is found necessary to change the classification of an employee from a *nonsupervisory* class ... to any other class, such change may be made administratively by the appointing power or powers, provided both classes are of the *same rank,* there is no increase or decrease in *grade,* and the employee has demonstrated the possession of the skills and aptitudes required in the position to which the employee is to be changed. Such change of classification may be made only with the approval of the director of personnel.
>
> B. Whenever it is found necessary to change the classification of an employee from a *supervisory* class not in a bargaining unit ... or a *managerial* class ... to any other class, such change may be made administratively by the appointing power or powers, provided there is no increase or decrease in *grade,* and the employee has demonstrated the skills and aptitudes required in the position to which the employee is to be changed.

Civil Service Rule 15.03 (emphasis added).

Dr. Weisbuch concedes that he was a Rule 15.03(B), not a 15.03(A), employee. Under Rule 15.03(B), Dr. Weisbuch's position and rank could be changed so long as he maintained his "grade." Unlike employees covered by Rule 15.03(A), he was not entitled to retain his "rank."

The County changed Dr. Weisbuch's position from Medical Director to Associate Medical Director. Whether this was a reduction in rank does not matter, because he was not covered by the rule entitling him to keep his rank. Dr. Weisbuch does not allege that the County reduced his "grade," and his grade was his only entitlement under the rules. He concedes that he kept the same grade and the same pay.

The above analysis is well established by California law. *See Shoemaker v. County of Los Angeles,* 37 Cal.App.4th 618, 43 Cal. Rptr.2d 774, 783 (1995) (doctor removed from supervisory position and transferred to a non-supervisory position had no "legitimate claim of entitlement to a *specific* position at the Medical Center" under the Civil Service Rules where his compensation and grade were not reduced); *Allen v. City of Beverly Hills,* 911 F.2d 367, 370 (9th Cir.1990).

## II. Claim Against The County Board of Supervisors.

Dr. Weisbuch's claim against the members of the County Board of Supervisors was also properly dismissed, because he did not allege any personal participation by them in violating his constitutional rights. As he described how and when his position was changed, none of the members of the Board of Supervisors had any personal participation. Members of a governing board cannot be vicariously liable under section 1983 for conduct by employees. *See Palmer v. Sanderson,* 9 F.3d 1433, 1438 (9th Cir.1993).

Dr. Weisbuch attempts to aver personal conduct—that the members of the Board of Supervisors found out he had been removed from his position and refused to overrule the chief of his department and reinstate him. That argument must be rejected, because it would always permit an "end run" around *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978):

> To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *responde-*

*at superior* liability into section 1983 law under the guise of *Pembaur*'s [*Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ], "single decision" rule. We decline to endorse this end run around *Monell.*

*Gillette v. Delmore,* 979 F.2d 1342, 1348 (9th Cir.1992).

### III. First Amendment Claim.

■ Dr. Weisbuch argues that his First Amendment right to free speech was violated by his demotion. We affirm dismissal of the claim, because Dr. Weisbuch had no right to remain as medical director while insisting on a mode of administering his department contrary to his supervisor's policies.

Dr. Weisbuch did not speak to the Board of Supervisors of the County as a citizen upon matters of public concern. He did not speak to them at all. He spoke to his supervisor, expressing disagreement about the way his supervisor was running the department and threatening to go over his supervisor's head to the Board if the supervisor did not do what Dr. Weisbuch thought he should. He thought his supervisor should defer more to the opinions of physicians in the department.

■ Employee speech on matters of "public concern," but "not complaints over internal office affairs," is protected by the First Amendment. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). As the Supreme Court explained in *Connick:*

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.
>
> .    .    .    .    .
>
> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark-and certainly every criticism directed at a public official-would plant the

seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Id.* at 147–49, 103 S.Ct. at 1690–91.

Dr. Weisbuch's request for greater deference to medical opinion within the department may arguably be entirely a "complaint[ ] over internal office affairs." He does aver, however, that failure to defer to medical opinion would have "implications for a 'Managed Care Program' in the Department of Health Services." He does not say what implications he means, but we assume without deciding that his threatened communication to the Board of Supervisors would implicate matters of public concern. We also assume without deciding that this private threat to make a public disclosure of disagreement with department policy, without having done so, is within the ambit of speech protected by the First Amendment.

■ Where a government employer takes action against an employee because of the employee's speech upon matters of public concern, we balance the employee's "interest in making [his] statement against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987) (quoting *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)); *see also Connick,* 461 U.S. at 150–51, 103 S.Ct. at 1691–92. The pertinent considerations of the government include such factors as impact on "working relationships for which personal loyalty and confidence are necessary":

> We have previously recognized as pertinent considerations whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Rankin v. McPherson,* 483 U.S. at 388, 107 S.Ct. at 2899; *see also Nelson v. Pima Community College,* 83 F.3d 1075, 1081 (9th Cir. 1996).

In many cases, factual development is necessary, so the balancing cannot be performed on a 12(b)(6) motion. *E.g., Hyland v. Wonder,* 972 F.2d 1129, 1140 (9th Cir.1992). Our review, however, is entirely de novo, *id.* at 1134, and in this particular case, we reach the same conclusion as the district judge, that the balance can only come out one way on the averments pleaded.[1]

Dr. Weisbuch was a high-level employee, the Medical Director of the Department of Health Services. His management disagreement would necessarily impair the level of confidence the Director of Health Services could have in his loyalty to departmental policies. *Cf. Rankin,* 483 U.S. at 390–91, 107 S.Ct. at 2900 ("[w]here, as here, an employee serves no confidential, policymaking, or pub-

1. The dissent says that balancing per *Pickering* generally cannot be done on a 12(b)(6) motion, so we should remand to allow factual development at least through summary judgment. It cites no case establishing that 12(b)(6) dismissal is always mistaken if *Pickering* balancing is necessary. *Hyland v. Wonder,* 972 F.2d 1129, 1139–40 (9th Cir.1992), establishes that a factual inquiry was necessary in that case, involving a low-level volunteer who wrote a memorandum to supervising judges about the juvenile probation office. No panel could decide that Federal Rule of Civil Procedure 12(b)(6) never applies to any *Pickering* balancing case, without running afoul of Congress's authority to promulgate the rules of court. *Hyland* makes sense as a case involving a low-level volunteer whose criticism would not, on its face as pleaded, necessarily cause the balancing to come out one way.

Well established precedent supports our analysis, as does logic. It is illogical to say that something is a question of law, and that it is reviewed de novo, yet that it can never be decided on the pleadings. "The inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers,* 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 1691 n. 7, 75 L.Ed.2d 708 (1983). Whether the case can be dismissed on the pleadings depends on what the pleadings say. "[A] plaintiff may plead herself out of court." *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir.1995). If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts. In this case, Dr. Weisbuch pleaded facts which establish that he cannot prevail on his First Amendment claim.

Other circuits have affirmed quite a few 12(b)(6) dismissals based on *Pickering* balancing, especially in cases involving high level officials. An analogy is sometimes drawn to *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) establishing that public employees may be fired on the basis of political affiliation where party affiliation is an appropriate requirement for that office. *Hall v. Ford,* 856 F.2d 255 (D.C.Cir.1988) expressly considers whether the appellate court can do the balancing on appeal of a 12(b)(6) dismissal, and concludes that it can:

> Although unadorned speculation as to the impact of speech, whether public or private, on the government's enterprise will not suffice under *Rankin* and *APWU [American Postal Workers Union v. United Postal Service,* 830 F.2d 294 (D.C.Cir.1987)]* , neither case forbids us from drawing reasonable inferences of harm from the employee's speech, his position, and his working relationship with his superior. *Connick,* for example, recognized that the employer need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." Just as the employer may be permitted to infer these untoward consequences from the· content, manner, time, and place of the employee's speech, so may we. Moreover, *Rankin* indicates that the higher the level the employee occupies, the less stringent the government's burden of proving interference with its interest.

*Id.* at 261. *Hall* rejects the proposition urged by the dissent in the case at bar, that factual development is necessary to see whether the workplace was effectively disrupted. *Warzon v. Drew,* 60 F.3d 1234 (7th Cir.1995), affirms dismissal on the pleadings of a health plan administrator's wrongful termination claim, based on *Pickering* balancing analysis, because the pleadings established facts such that the balancing could only come out one way. *See also Kaluczky v. City of White Plains,* 57 F.3d 202, 208–10 (2d Cir.1995); *Mitchell v. King,* 537 F.2d 385, 391 (10th Cir. 1976). The dissent cites a concurring opinion in *Jefferson v. Ambroz,* 90 F.3d 1291 (7th Cir.1996), for the proposition that factual development beyond the pleading stage is ordinarily necessary, yet that very concurrence joined the majority in a dismissal on the pleadings in a *Pickering* balancing case.

"[N]either the Constitution nor the *Pickering* balancing test requires a public employer to entrust an adversary or critic with a sensitive, confidential or policy role." *Kaluczky,* 57 F.3d at 210. Los Angeles County was entitled to have a director of medical services whom his supervisor could trust to carry out his supervisor's policy, so as a matter of law it could remove Dr. Weisbuch from the directorship when he proposed to go public with his disagreement.

lic contact role, the danger to the agency's successful functioning from that employee's private speech is minimal"); *Hall v. Ford,* 856 F.2d 255, 263 (D.C.Cir.1988) ("[h]igh-level officials must be permitted to accomplish their organizational objectives through key deputies who are loyal, cooperative, willing to carry out their superiors' policies, and perceived by the public as sharing their superiors' aims. . . ."). Dr. Weisbuch's disagreement with how the director directed would necessarily undermine the director's confidence that Dr. Weisbuch would manage his own department as his supervisor wanted, not as Dr. Weisbuch wanted.

A government department cannot select a policy and carry it out unless the higher ranking people can be assured that their subordinates will carry it out. At Dr. Weisbuch's high level, his supervisor may need to be confident that he agrees with the supervisor's policy. A legal services director whose priority is Indian rights may need an intake director to accept cases facilitating this policy, not one whose priority is domestic abuse cases. A district attorney whose priority is violent crimes may need an intake supervisor who agrees, not one who believes and gives speeches to the effect that the number one priority should be narcotics cases. The alternative would be a policy carried out inefficiently or not at all, and constant departmental strife as the higher level supervisor was perceived to be spying on or micromanaging the renegade director's department to see whether it was carrying out official policies. *Cf. Tyler v. City of Mountain Home, Arkansas,* 72 F.3d 568 (8th Cir.1995).

■ Had Dr. Weisbuch been punished, beyond his demotion, for threatening to go public with his disagreement, this would be a different case. *Cf. Hyland,* 972 F.2d at 1133; *Lambert v. Richard,* 59 F.3d 134, 135 (9th Cir.1995). Dr. Weisbuch's duties as the Medical Director also distinguish him from a public employee speaking as a union representative who disagrees with official policy. *See Lambert,* 59 F.3d at 137. But we need not decide those cases, because Dr. Weisbuch was not punished beyond his demotion, and he had no duties comparable to a union representative. The department carefully avoid-

ed dismissing, reprimanding, or otherwise punishing Dr. Weisbuch. It kept him on at the same pay, as Associate Medical Director, but used someone else as Medical Director to carry out the Health Services Director's policy. Dr. Weisbuch had been hired not only to direct the medical department, but also, according to his complaint, to act in the capacity of "Chief Medical Advisor to Defendant Robert C. Gates the Director of Health Services." Mr. Gates, knowing that Dr. Weisbuch thought his approach wrongheaded, would be unable to have the same confidence that Dr. Weisbuch's advice would be intended to facilitate his policies, as he could have if his chief advisor agreed with his policies.

> When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate. Furthermore, we do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.

*Connick,* 461 U.S. at 151–52, 103 S.Ct. at 1692.

Not every change in office management need be characterized as a punishment for First Amendment purposes. *Cf. Kaluczky,* 57 F.3d at 210. In a high level supervisory position, or a confidential advisory position, the requirement of agreement with a supervisor's policy views may be entirely appropriate:

> On the other hand, it is equally clear that the Governor of a State may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments.

*Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980). *See also Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir.1995). The elected officials of the County were responsible to the voters for the policies the County implemented, and the voters' control requires that the County be able to maintain a hierarchy of directors and high

level advisors who can be relied upon to try to carry out those policies which are adopted.

The reassignment of duties did not silence Dr. Weisbuch. He could still tell the County Board of Supervisors that he thought more deference should be given to medical opinion. Dr. Weisbuch may have had a right to say what he did in the context that he said it, but he did not have a right to say it as Medical Director.

AFFIRMED.

FLETCHER, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's opinion, except insofar as it holds that Dr. Weisbuch failed to make out a First Amendment claim against his employer.

The majority agrees, at least for the sake of decision, that Dr. Weisbuch met the threshold pleading requirements of a First Amendment claim by alleging that Gates and the Board deprived him of a valuable government benefit (his title and position as medical director) in retaliation for his threat to speak out on a matter of public concern (Gates' failure to consider medical opinion in making Health Services decisions). Having met these threshold requirements, Dr. Weisbuch still might lose if his free-speech interest in making his statements is outweighed by the Department's interest in "promoting the efficiency of the public services it performs through its employees," *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968), and "the effective and efficient fulfillment of its responsibilities to the public." *Connick v. Myers*, 461 U.S. 138, 150, 103 S.Ct. 1684, 1692, 75 L.Ed.2d 708 (1983).

I part ways with the majority when it proceeds with this balancing test. On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), we should determine only whether Dr. Weisbuch's allegations, if proved, would state a claim on which relief could be granted. Our review is limited to the contents of Dr. Weisbuch's complaint. *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.1996). "Dismissal for failure to state a claim is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Argabright v. United States*, 35 F.3d 472, 474 (9th Cir.1994) (citations and internal quotations omitted). In order to conduct the *Pickering* balancing analysis, we must weigh evidence regarding Dr. Weisbuch's and his employer's relative interests; such weighing is inappropriate, if not impermissible, at the dismissal stage.

Numerous federal appellate panels have applied the *Pickering* test. Few, however, have considered that test in the context of a motion to dismiss. Fewer still have affirmed dismissal in reliance on *Pickering*. *See Jefferson v. Ambroz*, 90 F.3d 1291, 1298 (7th Cir.1996) (Rovner, J., concurring) (noting that only extraordinary facts justified dismissal and that *Pickering* balance ordinarily requires further factual development); *Hyland v. Wonder*, 972 F.2d 1129, 1140 (9th Cir.1992) (remanding for further factual development on balancing issue), *cert. denied*, 508 U.S. 908, 113 S.Ct. 2337, 124 L.Ed.2d 248 (1993); *Thomas v. Carpenter*, 881 F.2d 828, 831–32 (9th Cir.1989) (remanding because balancing analysis cannot be completed on the basis of the pleadings alone), *cert. denied*, 494 U.S. 1028, 110 S.Ct. 1475, 108 L.Ed.2d 612 (1990). Where a court has affirmed dismissal, its decision generally rests on the plaintiff's failure to meet the "public concern" requirement, not on the *Pickering* balance. *See Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1226–27 (6th Cir.1997) (affirming dismissal because plaintiff did not speak out on a matter of public concern); *Luck v. Mazzone*, 52 F.3d 475, 477 (2d Cir. 1995) (affirming dismissal because challenged speech only implicated matters of private concern).

Had this case reached us on a motion for summary judgment, we could properly apply the *Pickering* balancing analysis. *See Wheaton v. Webb–Petett*, 931 F.2d 613, 618 (9th Cir.1991). The cases on which the majority supports its balancing analysis, *Connick* and *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), reached the Supreme Court on summary judgment. *Pickering* itself reached the Court after ad-

ministrative proceedings and related state-court appeals. *Waters v. Churchill*, 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), the Court's recent refinement of the *Pickering/Rankin* test, also involved the summary judgment stage.

The majority cites *Hall v. Ford*, 856 F.2d 255 (D.C.Cir.1988) to support its use of the balancing test at the dismissal stage. Majority op. at 783–784, note 1. Procedurally, *Hall* does resemble this case. But first off, *Hall* is at odds with Ninth Circuit precedent, and second, the D.C. Circuit perceived itself able to draw concrete "reasonable inferences" about possible "untoward consequences from the content, manner, time, and place of the employee's speech." *Hall*, 856 F.2d at 261. The *Hall* court extensively discussed the plaintiff's position, responsibilities, and protected speech and balanced them against his employer's specific interest in formulating and implementing its athletic department policies. *Id.* at 264–65. The court concluded that "Hall could be dismissed for expressing views on matters within the core of his responsibilities that reflected a policy disagreement with his superiors such that they could not expect him to carry out their policy choices vigorously." *Id.* at 265.

Here, however, the majority has no allegations in the pleadings that might allow adequate analysis specific to Dr. Weisbuch's case or the Department of Health's actual policies and interests. Instead, the majority relies on "unadorned speculation," *Hall* at 261, and inapposite analogies in reaching the conclusion that "the balance can only come out one way on the averments pleaded." Majority op. at 783.

In the current procedural posture of this case, we are ill-equipped and, in fact, under Ninth Circuit precedent precluded from determining whether the balance of interests tips in favor of Gates and the Board. *See Hyland*, 972 F.2d at 1140 ("This balancing inquiry *cannot* be resolved by this court at such an early stage in the proceedings.") (emphasis added); *Thomas*, 881 F.2d at 832. The district court did not treat the defendants' motion as one for summary judgment, nor can we. The defendants have presented no evidence, and, indeed, at this stage are precluded from introducing evidence, that Dr. Weisbuch's threatened statements disrupted the Department's operations at all, let alone whether they were "sufficiently disruptive to justify his [demotion] despite the protected content of the speech." *Hyland*, 972 F.2d at 1140. The district court dismissed the complaint summarily, in a two-paragraph order containing no analysis of Dr. Weisbuch's claims. The record in this case is not sufficiently developed to justify the majority's conclusion that the *Pickering* balance can only tip in the defendants' favor.

I also disagree with the majority's suggestion that the outcome might differ if Dr. Weisbuch had been "punished." In an appeal from dismissal under Rule 12(b)(6), we must accept as true Dr. Weisbuch's allegation that he was demoted for threatening to contact the Board. *Federation of African American Contractors*, 96 F.3d at 1207. The majority assumes that this threat involved constitutionally-protected speech. Once we determine that Dr. Weisbuch was demoted in retaliation for exercising his First Amendment rights, whether he was "punished" plays no role in our analysis.

I would remand this case to the district court for further factual development on Dr. Weisbuch's First Amendment claims. I respectfully dissent from the majority's contrary holding.