**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CARMEN S. SPENCER,

      Plaintiff-Appellant,

v.

CITY OF MIDWEST CITY, a
municipal corporation; MICHAEL W.
BOWER, individually and in his
official capacity as Fire Chief,

      Defendants-Appellees.

No. 04-6281

(D. Oklahoma)

(D.C. No. CIV-03-1286-C)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HENRY**, and **MURPHY**, Circuit Judges.

Carmen S. Spencer formerly worked as the secretary for Michael W. Bower, the Fire Chief for Midwest City, Oklahoma. Ms. Spencer became concerned that Chief Bower was having an improper personal relationship during his work hours, and she obtained the records for the cell phone that the City had provided him. Chief Bower confronted her about the request and told her that he would recommend her replacement. Ms. Spencer refused the City Manager's

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

offer of a transfer to another job and was terminated. She then brought this action for damages under 42 U.S.C. § 1983, claiming that the transfer offer and subsequent termination were unlawful retaliation for the exercise of her First Amendment right to receive information. The district court granted summary judgment to the City and Chief Bower (on grounds of qualified immunity), and Ms. Spencer timely appealed. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court, but for slightly different reasons than those adopted by the court.

## I. BACKGROUND

Ms. Spencer was a City employee from February 1990 until her termination on October 14, 2002. At the time of her termination, she served as Chief Bower's administrative secretary. She reported directly and only to him, and performed work that he assigned to her. Ms. Spencer handled confidential and sensitive information for the fire department, including internal investigations and personnel and disciplinary matters. She also maintained the fire department's employee medical files.

By September 2002, Ms. Spencer had become concerned that Chief Bower was having an extra-marital affair. She contacted the City Clerk's office and later obtained copies of recent statements for Chief Bower's City-issued cell phone. Ms. Spencer did not otherwise have access to the cell phone records because his

monthly statement never came to the fire department and instead was always sent to the City Clerk's office. The parties do not dispute that Chief Bower's phone bill was a public record available for public inspection under the state's Open Records Act. *See* OKLA. STAT. tit. 51, § 24A.5. Under the Act and the City's procedures, an interested individual who submits a records-request form to the City Clerk's office and pays for any requested copies may receive certain publicly available records.

The record is unclear as to the form and number of Ms. Spencer's requests for Chief Bower's phone records. Ms. Spencer testified in her deposition that she did not provide a reason when requesting the cell phone records from the City Clerk's office. Sandra Gramlich, an employee in the City Clerk's office who provided the records to Ms. Spencer, testified that Ms. Spencer made two requests: one oral request, and another request in which she completed a written form. When Ms. Spencer initially called for any records, she did not state that she was requesting the records pursuant to the Open Records Act. Ms. Gramlich believed that Ms. Spencer was requesting copies of the phone records on behalf of Chief Bower because Ms. Spencer was his administrative secretary. Further, no testimony indicates that Ms. Spencer ever paid for copying costs of the records that she requested.

On October 1, 2002, Chief Bower learned about Ms. Spencer's request for his phone records and confronted her. Ms. Spencer explained that she wanted to

know with whom he was talking. Chief Bower then told her that he could not trust her anymore and would be recommending her replacement. Chief Bower again met with Ms. Spencer the next morning and advised her of his recommendation to terminate her employment. He also claims that during this conversation he ordered her to report to the Human Resources Department before she left the City offices. Ms. Spencer did not report, but testified that she did not recall being told to see the Human Resources Director.

The next day, Chief Bower recommended to the City's Administrative Review Board ("the Board") that Ms. Spencer be terminated. His letter to the Board stated that her recent actions had been "unprofessional and unacceptable" because she "procured a copy of [his] cell phone record representing that she was authorized to make this request." Aplt's Sealed App. at 6. He considered this "an unauthorized and inappropriate acquisition of official city records." *Id.* Chief Bower also noted that Ms. Spencer did not report to the Human Resources Director, as he had ordered, and her failure to report was "direct insubordination." *Id.* On October 4, 2002, the Board recommended that the City Manager terminate Ms. Spencer, based in part on her "attempt[] to conduct an unauthorized investigation[,] thus procuring by false pretenses a copy of Chief Bower's cell phone bill." *Id.* at 8.

Ms. Spencer appealed the recommendation to the City Manager, Charles Johnson. In a handwritten appeal to City Manager Johnson, Ms. Spencer wrote

-4-

that "I have worked over 12 years in what I consider 'cover-up' behavior I've been required to condone at the risk of losing my job." *Id.* at 10. She added: "I obtained the records in an attempt to clear my own conscience that the numerous phone calls and absenteeism were all innocent. The record was only for my viewing and there was no intent to share it with anyone." *Id.* Ms. Spencer later met with City Manager Johnson and the Human Resources Director, Tim Lyon. According to these men, Ms. Spencer stated during their meeting that she believed Chief Bower was having an affair, and she planned to call Chief Bower's wife and children if the records confirmed her suspicion. Ms. Spencer also stated at the meeting that she could no longer work for Chief Bower because she did not trust him.

Based on the deterioration in her relationship with Chief Bower, City Manager Johnson offered Ms. Spencer another job as a clerk in the City Clerk's office. The clerk position paid less than her position with Chief Bower. The City maintains that, as part of the proposed transfer, her existing salary would have been preserved for one year. If another administrative position with the City became available, she could have applied for it and would have been paid her current salary if she had obtained it. Ms. Spencer contends that she was not informed of these conditions related to a transfer. She would not accept the transfer and would not resign. City Manger Johnson subsequently terminated her employment effective October 14, 2002.

Ms. Spencer filed this suit for damages under 42 U.S.C. § 1983. She claimed that the City and Chief Bower unlawfully retaliated against her, by an unwanted transfer offer and subsequent termination, for the exercise of her First Amendment right to receive information.

The district court granted summary judgment in favor of the City and Chief Bower. The court first construed Ms. Spencer's complaint as a claim for wrongful termination and examined the evidence for (1) participation in a protected activity, (2) an adverse employment action against her, and (3) a causal connection between the protected activity and the adverse employment action. Rec. vol. II, at 513 (Dist. Ct. Order, filed Aug. 24, 2004) (citing *Hudson v. Norris*, 227 F.3d 1047, 1050-51 (8th Cir. 2000)). The district court concluded that "under the undisputed facts [Ms. Spencer] did not suffer an adverse employment action," and granted summary judgment with respect to the unlawful termination claim. *Id.* The court also granted qualified immunity to Chief Bower after determining that Ms. Spencer failed to demonstrate the existence of a clearly established right of a public employee to receive information in this context. Ms. Spencer timely appealed the district court's grant of summary judgment.

## II. DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "We review grants of summary judgment *de novo* to determine whether any genuine issue of material fact exists, viewing all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party." *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003). "[W]e have discretion to affirm on any ground adequately supported by the record so long as the parties have had a fair opportunity to address that ground." *Maldonado v. City of Altus*, 433 F.3d 1294, 1302-03 (10th Cir. 2006) (internal quotation marks and citation omitted).

A.    Application of the *Connick*/*Pickering* framework

The Supreme Court has made it clear that public employees do not surrender their First Amendment rights by virtue of their government employment. *Connick v. Myers*, 461 U.S. 138, 140 (1983). However, "when the government acts as an employer, the First Amendment does not apply with full force." *Arndt v. Koby*, 309 F.3d 1247, 1251 (10th Cir. 2002). "The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as a sovereign to a significant one when it acts as employer." *Waters v. Churchill*, 511 U.S. 661, 675 (1994). Courts therefore have adopted a four-factor test to determine whether the government as an employer can regulate a public employee's speech or alter her

conditions of employment without violating her First Amendment guarantees.

For a public employee to prevail against her governmental employer on a First Amendment claim of retaliation, the employee must first prove that her speech involved a matter of public concern. *See Connick*, 461 U.S. at 146 ("When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."). Second, the public employee's interest "in commenting upon matters of public concern" must outweigh the public employer's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

Third, the speech must be "a substantial motivating factor behind the employer's decision to take an adverse employment action against the employee." *Maestas v. Segura*, 416 F.3d 1182, 1187 (10th Cir. 2005) (internal quotation marks omitted). Finally, if the public employee satisfies the first three prongs, she succeeds unless "the employer establishes it would have taken the same action in the absence of the protected speech." *Id.* The first two prongs are legal questions to determine whether the speech is constitutionally protected, and the final two steps involve questions of fact. *Id.* at 1187-88.

For purposes of this appeal, we will assume (as the district court and

parties have) that Ms. Spencer's request for and inspection of Chief Bower's phone records are "speech" under the First Amendment. *See* Rec. vol. II, at 513 ("[a]ssuming[] without deciding," at the beginning of the district court's discussion, that Ms. Spencer "engaged in a protected activity" under the First Amendment); Aple's Br. at 51 (arguing that Chief Bower was entitled to the defense of qualified immunity "because it is not clearly established that Spencer's alleged exercise of First Amendment rights, in the context of this case, involved a matter of public concern"). *But see Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978) (noting that the Supreme Court "has never intimated a First Amendment guarantee of a right of access to all sources of information within government control"); *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164, 1165-67 (3d Cir. 1986) (rejecting a newspaper's First Amendment challenge to the denial of access to various records in the sole possession of the state's environmental agency).

We also assume without deciding that Ms. Spencer's speech involved a matter of public concern, and we therefore examine her claim under the *Pickering* balancing framework. *See, e.g.*, *Matthews v. Columbia County*, 294 F.3d 1294, 1296 (11th Cir. 2002) (analyzing a county employee's claim that she was terminated in retaliation for her comments about a company with which the county was considering contracting, and stating that "[f]or the purposes of this appeal, we will assume (without deciding) that Plaintiff's speech is protected by the First Amendment"); *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 782

(9th Cir. 1997) (assessing a county medical director's claim that he was demoted in retaliation for speaking to his supervisor, and "assum[ing] without deciding that [the plaintiff's] threatened communication to the Board of Supervisors would implicate matters of public concern" and "also assum[ing] without deciding that this private threat to make a public disclosure of disagreement with department policy, without having done so, is within the ambit of speech protected by the First Amendment").

The district court did not consider Ms. Spencer's claim under *Pickering*. We can nonetheless proceed because this is a legal question reviewable de novo, the record is sufficient to allow us to do so appropriately, and the parties raised the issue in briefing. *See Maldonado*, 433 F.3d at 1302-03; *Koch v. City of Hutchinson*, 847 F.2d 1436, 1441 & n.14 (10th Cir. 1988) (en banc).

B.   *Pickering* balancing test

The *Pickering* balancing test "requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public," *Connick*, 461 U.S. at 150, weighed against Ms. Spencer's interest in obtaining and reviewing Chief Bower's phone records. We consider the "manner, time, and place of the employee's expression" when balancing these interests. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). Relevant considerations include whether Ms. Spencer's acquisition and inspection of Chief Bower's phone records (1) "impair[ed] discipline by superiors or

harmony among co-workers," (2) "ha[d] a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or" (3) "impede[d] the performance of [her] duties or interfere[d] with the regular operation of the enterprise." *Id.*

"[A]n employees's First Amendment rights may not be restricted unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee." *Dill v. City of Edmond*, 155 F.3d 1193, 1203 (10th Cir. 1998) (internal quotation marks omitted). The City "cannot rely on purely speculative allegations" that the request for and inspection of the records "caused or will cause disruption." *Id.* (quotation marks omitted). However, "the government need not wait for speech actually to disrupt core operations before taking action." *Belcher v. City of McAlester*, 324 F.3d 1203, 1209 n.7 (10th Cir. 2003) (internal quotation marks omitted).

After considering several relevant *Pickering* factors in light of the totality of the circumstances, we conclude that the City's interest in the effective functioning of the fire department outweighs Ms. Spencer's interest in acquiring and reviewing Chief Bower's phone records.

First, we recognize that "a wide degree of deference" is given to the City's personnel decision in light of the "close working relationship[]" between Chief Bower and his administrative secretary; such a confidential relationship is

-11-

"essential to fulfilling public responsibilities." *Connick*, 461 U.S. at 151-52. Our court has specifically recognized "a heightened governmental interest in maintaining harmony among fire department employees." *Belcher*, 324 F.3d at 1209 (concluding that a city's interest in harmony in its fire department outweighed a city firefighter's interest in contacting city council members and expressing concerns about the purchase of a fire truck) (internal quotation marks omitted). As Chief Bower's administrative secretary, Ms. Spencer handled confidential and sensitive information. When a public official like Chief Bower requires loyalty and trust in a confidential employee, we are particularly hesitant to interfere with his determination that the employee has compromised that relationship. As the Seventh Circuit noted, "[y]ou cannot run a government with officials who are forced to keep [their] enemies as their confidential secretaries." *Soderbeck v. Burnett County,* 752 F.2d 285, 288 (7th Cir. 1985).

Second, we consider whether Ms. Spencer's request for the phone records impeded her ability to perform her office duties. She contacted Ms. Gramlich in the City Clerk's office by phone during regular office hours–not as a regular citizen, but as the fire chief's administrative secretary–to acquire any available records for Chief Bower's City-issued cell phone. Ms. Spencer later obtained copies of the records without payment. Moreover, the record shows that Ms. Spencer's suspicion of Chief Bower's extra-marital activities did not manifest itself exclusively in her request for his phone records. Ms. Spencer stated in her

deposition that she discussed Chief Bower's possible extra-marital activities with at least four other City employees.

Third, Ms. Spencer's responses to Chief Bower's questions–after he discovered she had requested his phone records–unquestionably had a detrimental effect on their working relationship. When Chief Bower confronted Ms. Spencer about the request on October 1, 2002, she stated that she had seen him speaking with a woman who was not his wife in the City's parking lot and also wanted to know with whom he had been speaking on the phone. Chief Bower told her that he could not trust her anymore and would be recommending her replacement. Ms. Spencer replied that she no longer trusted him. Further, City Manager Johnson and Mr. Lyon stated in their affidavits–and Ms. Spencer does not contest this–that she told them during her appeals meeting that she could no longer work for Chief Bower because of the loss of trust. The series of events related to Ms. Spencer's request for the phone records indisputably affected the harmony of Chief Bower's office and eroded his trust in Ms. Spencer as a loyal administrative secretary; likewise, Ms. Spencer apparently had no desire to continue in this working relationship.

Fourth, and significantly, Ms. Spencer's personal motive in requesting Chief Bower's cell phone records also weighs against her First Amendment claim. "[I]nsofar as self-interest is found to have motivated public-employee speech, the employee's expression is entitled to less weight in the *Pickering* balance than

speech on matters of public concern intended to serve the public interest." *O'Connor v. Steeves*, 994 F.2d 905, 915 (1st Cir. 1993). Even if Chief Bower's publicly available phone records had some inherent public concern, a proposition that we assume but do not resolve here, under *Pickering* we can weigh Ms. Spencer's interests in those records according to any self-expressed motive in acquiring them.

Thus, we attribute *less* weight to Ms. Spencer's interest because she wanted the records "to clear [her] conscience that the numerous phone calls and absenteeism were all innocent." Aplt's Sealed App. at 10. She made clear in her appeal to City Manager Johnson that "[t]he record was only for [her] viewing and there was no intent to share it with anyone." *Id.* During her appeal procedures with the City, Ms. Spencer did not indicate a motive to obtain the phone records to facilitate public interest. Moreover, she admitted in her deposition that during her City employment she had never complained to Chief Bower, the City Manager's office, or the Human Resources Department that Chief Bower was misusing City funds or unnecessarily absent from work.

Given Ms. Spencer's private motives to acquire the phone records, this case can be distinguished from one in which a public employee seeks to uncover public corruption in a "good-faith whistleblowing context." *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001). Our court has previously noted that "[w]hen balancing the rights of the employee against those of the employer, an employee's

First Amendment interest is entitled to greater weight where he is acting as a whistle blower in exposing government corruption." *Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir. 1988); *see also Prager v. LaFaver*, 180 F.3d 1185, 1191 (10th Cir. 1999) (noting that a state employee's "whistle blowing activity," which consisted of a letter critical of his department that he had sent to the Governor, was "entitled to substantial weight" under *Pickering*). Based on Ms. Spencer's written appeal to City Manager Johnson and her statements during the appeal procedures, we conclude that her activities were not expressly directed to the public or the media. Instead, she was interested to learn about the phone records "to clear [her] own conscience" and had "no intent to share [them] with anyone." Aplt's Sealed App. at 10.

Finally, we consider Chief Bower's statement in his Board letter that Ms. Spencer did not report, as he had ordered her, to the Human Resources Department. Ms. Spencer testified that she does not remember Chief Bower ordering her to report. "Employee acts of insubordination may tip the balancing process in favor of the employer's interests in the efficient promotion of its services." *Barnard v. Jackson County*, 43 F.3d 1218, 1224 (8th Cir. 1995). While this factor is not dispositive, it also favors the City's interests in terminating Ms. Spencer's employment under *Pickering*.

In sum, the City's interest in an efficient and harmonious operation of the fire department outweighs Ms. Spencer's interest in inspecting Chief Bower's

-15-

phone records out of a predominantly personal motive. Therefore, the City did

not terminate Ms. Spencer in violation of her First Amendment rights as a public

employee. Because her inspection of the records was not entitled to First

Amendment protection, we need not reach the defense of qualified immunity that

Chief Bower raises.[1]


## III. CONCLUSION

Accordingly, on grounds different from the district court, we AFFIRM the

grant of summary judgment to the City and Chief Bower.


Entered for the Court,


Robert H. Henry
Circuit Judge

---

[1]Though we resolve this appeal on other grounds, we note our disagreement with the district court's conclusion that the City took no adverse employment action against Ms. Spencer. Evidence in the record, sufficient to preclude summary judgment, indicates that Ms. Spencer was being offered an involuntary demotion to the City Clerk's office, where her pay and benefits would be preserved only for one year. *See, e.g., Schuler v. City of Boulder*, 189 F.3d 1304, 1309 (10th Cir. 1999) ("[D]eprivations less harsh than dismissal . . . nevertheless violate[] a public employee's rights under the First Amendment.").

-16-