59 F.3d 134
 149 L.R.R.M. (BNA) 2859, 95 Cal. Daily Op.
Serv. 5315,
95 Daily Journal D.A.R. 9089
 Barbara LAMBERT; Santa Ana City; Santa Ana City Employees
Association, Plaintiffs-Appellees,
v.
Robert RICHARD, Director, Library Department Director;
David Ream, City Manager; City of Santa Ana,
Defendants-Appellants.
 No. 94-55129.
 United States Court of Appeals,
Ninth Circuit.
 Submitted June 6, 1995*.
Decided July 10, 1995.
 
 Robert J. Wheeler, Asst. City Atty., Santa Ana, CA, for defendants-appellants.
 Paul Crost, Reich, Adell, Crost & Cvitan, Orange, CA, for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: Betty B. FLETCHER, Charles WIGGINS, and Ferdinand F. FERNANDEZ, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 The City of Santa Ana, Robert Richard, its Library Department Director, and its City Manager, David Ream, defendants in a Section 1983 action,[1] appeal the judgments against them imposing liability, awarding damages, injunctive and declaratory relief, and denying qualified immunity to the individual defendants. The suit arises out of a letter of reprimand sent by Richard to Barbara Lambert, a library employee and union representative, for her statement before the City Council in her capacity as a representative of the Santa Ana City Employees Association (SACEA) criticizing Richard.
 
 PROCEDURAL HISTORY
 
 2
 On November 23, 1992, the district court granted the plaintiffs' motion for summary judgment on the issue of liability, finding all of the defendants liable for violating the plaintiffs' First Amendment rights, and denied the defendants' motion for summary judgment seeking dismissal. It also held that plaintiffs were entitled to declaratory and injunctive relief. On July 26, 1993, the court granted the plaintiffs' motion for summary judgment denying qualified immunity to the individual defendants, but declined to rule on the defendants' motion for summary judgment requesting immunity. On August 5, 1993, a jury awarded Lambert $10,000 in compensatory damages from the City, Ream and Richard, and $20,000 in punitive damages from Richard.
 
 
 3
 On appeal, the defendants do not appeal the amount of damages or the appropriateness of the other remedies imposed by the district court. The principal thrust of their challenge to the district court's rulings is their contention that the employee's speech was not entitled to First Amendment protection because it did not address a matter of public concern. We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 FACTS
 
 4
 On October 15, 1990, Lambert appeared before the Santa Ana City Council on behalf of SACEA. She read a prepared statement in which she criticized Library Director Robert Richard's management practices. She asserted that the library was just "barely" functioning as a result of Richard's mismanagement, and asked the council to turn over to SACEA a study of library staff attitudes toward Richard.
 
 
 5
 Lambert was not the first city employee to publicly question Richard's job performance. Librarians had begun wearing anti-Richard buttons at work. Two weeks before Lambert addressed the council, SACEA President Eddie Bentley had complained to that body about the lack of communication between library staff and Richard, and the staff's lack of confidence in Richard. Santa Ana Mayor Dan Young had asked Ream to investigate Bentley's allegations and to report back to the council within two weeks.
 
 
 6
 In November, Richard issued a letter of reprimand to Lambert "for insubordinate action taken by [her] at an evening session of the City Council and for not utilizing established procedures for a grievance." The letter was placed in Lambert's personnel file. After Ream rejected the SACEA's demand that the letter be withdrawn and that Richard be disciplined for violating Lambert's constitutional rights to speak, petition, and engage in union activities, Lambert and the SACEA sued Richard, Ream, and the City. They sought declaratory and injunctive relief and damages under 42 U.S.C. Sec. 1983, for violations of Lambert's First and Fourteenth Amendment rights, and under the Meyers-Milias-Brown Act, California Government Code Sec. 3500 et seq. They also requested an order directing the defendants to rescind the letter of reprimand.
 
 DISCUSSION
 
 7
 We review de novo the district court's grant of summary judgment. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 
 8
 The Supreme Court outlined the test for First Amendment protection of government employees' speech in Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). To receive protection, the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury that the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Id. at 572-74, 88 S.Ct. at 1737; Waters v. Churchill, --- U.S. ----, ----, 114 S.Ct. 1878, 1884, 128 L.Ed.2d 686 (1994).
 
 
 9
 "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). This is a question of law. Id. at 148 n. 7, 103 S.Ct. at 1691 n. 8. "Speech focused solely on internal policy and personnel grievances does not implicate the First Amendment." Hyland v. Wonder, 972 F.2d 1129, 1137 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2337, 124 L.Ed.2d 248 (1993). We review de novo whether Lambert's speech is a matter of "public concern." Id. at 1134.
 
 
 10
 There is no question that Richard's management style had become an issue of significant public concern by the time Lambert spoke to the council. Among the district court's factual findings undisputed in the record were that "[p]rior to October 15, 1990, the tension between the staff of the City Library and defendant Richard became the subject of public discussion. SACEA and its members employed by the library had protested to City management regarding Richard's conduct. The protests included assertions that Richard mismanaged the library department and treated employees in an abusive and intimidating manner, and that Richard's conduct was having an adverse effect on service to the public."
 
 
 11
 Lambert told the council that the library was "barely" functioning and that employees who dealt regularly with the public were performing "devoid of zest, with leaden hearts and wooden hands." Given that operation of a public library is among the most visible of the functions performed by city governments, Lambert had a Constitutional right--and perhaps a civic duty--to inform the council if library service was jeopardized by poor management at the top. See Connick, 461 U.S. at 148, 103 S.Ct. at 1690 ("discipline and morale in the workplace are related to an agency's efficient performance of its duties"); Hyland, 972 F.2d at 1137 (holding abuses, inefficiency, threats to public safety, potential civil rights violations, and incompetence of public law enforcement officials "are of vital interest to citizens in evaluating the performance of their government"); Roth v. Veteran's Admin., 856 F.2d 1401, 1405 (9th Cir.1988) ("misuse of public funds, wastefulness, and inefficiency in managing and operating governmental entities" are matters of public concern); Allen v. Scribner, 812 F.2d 426, 431 (9th Cir.), amended, 828 F.2d 1445 (9th Cir.1987) (competency of project management as well as efficient performance of project duties constitute matters of public concern); McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir.1983) (competency of police force surely matter of great public concern, as is interrelationship between city management and its employees).
 
 
 12
 The appellants' claim that Lambert's speech was merely "a petty personnel grievance in which she and some of her fellow library employees were personally interested and involved" is belied by the facts that Lambert spoke as a union representative, not as an individual, and that she described departmental problems, not private grievances. Cf. Connick, 461 U.S. at 141, 103 S.Ct. at 1687 (not a matter of public concern when remarks "reflect one employee's dissatisfaction with a transfer and an attempt to turn that displeasure into a cause celebre"); Havekost v. United States Dep't of Navy, 925 F.2d 316, 318 (9th Cir.1991) (holding complaint about dress code and staffing policies "nothing more than a workplace grievance" and noting that a "critical inquiry is whether employee spoke in order to bring wrongdoing to light or merely to further some purely private interest"); McKinley, 705 F.2d at 1114 ("Speech by public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies").[2] The fact that Lambert spoke at a televised city council meeting underlines the public nature of the Richard controversy.[3]
 
 
 13
 Because Lambert's remarks were so clearly protected, Richard and Ream were not entitled to qualified immunity. When the law is clearly established, public officials are immune only when they objectively could have believed that their conduct was lawful. Act Up/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993). In light of the prior public criticism and the city manager's investigation of Richard, and the fact that Lambert appeared before the city council as a union official, any reasonable official quickly would have recognized Lambert's speech as one addressed to a matter of public concern. The actions taken by Richard and endorsed by Ream were retaliatory, not reasonable.
 
 CONCLUSION
 
 14
 The district court correctly determined that Lambert's remarks to the City Council addressed a matter of public concern. Therefore, the court properly granted the plaintiffs' motion for summary judgment and denied the defendants' motion for summary judgment on the issue of section 1983 liability. Because reasonable public officials in Richard's and Ream's positions would have recognized that Richard's conduct was unlawful, the district court did not err in granting the plaintiffs' motion for summary judgment denying qualified immunity to the individual defendants.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 [1]
 The district court dismissed the state law claims
 
 
 [2]
 We reject the appellants' argument that even if parts of Lambert's speech touched on matters of public concern, she was reprimanded not for these but for other parts of her speech that were merely character assassination, as permitted by Waters, --- U.S. at ----, 114 S.Ct. at 1891. While the letter of reprimand singles out certain comments that Lambert made to the council, these are mentioned as examples of the inappropriate nature of the entire statement. See also Anderson v. Central Point School Dist. No. 6, 746 F.2d 505 (9th Cir.1984) ("Connick does not require every word of a communication to be of interest to the public.")
 
 
 [3]
 The defendants contend that the forum in which the statement is made can be considered only in the second half of the Pickering test, i.e., whether the employee's interest in free expression is outweighed by the employer's interest in work place efficiency. However, this argument was rejected by the Connick majority. Connick, 461 U.S. at 159, 103 S.Ct. at 1696 (Brennan, J., dissenting)