**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PETER TURNER,
            *Plaintiff-Appellant*,

v.

CITY AND COUNTY OF SAN
FRANCISCO; SAN FRANCISCO
DEPARTMENT OF PUBLIC WORKS; ED
REISKIN; BRUCE STORRS,
            *Defendants-Appellees*.

No. 13-15099

D.C. No.
3:11-cv-01427-
EMC

OPINION

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted
January 15, 2015—San Francisco, California

Filed June 11, 2015

Before: J. Clifford Wallace, Milan D. Smith, Jr.
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Civil Rights

The panel affirmed the district court's dismissal of an action against the City and County of San Francisco by a former employee who alleged that he was wrongfully discharged in retaliation for engaging in protected speech.

Plaintiff alleged that statements he made to his supervisors regarding the alleged unlawful hiring and use of temporary exempt employees in contravention of the San Francisco Charter were related to a matter of "public concern," and were therefore protected by the First Amendment.

The panel determined that plaintiff's complaints, while potentially significant in their implication, arose primarily out of concerns for his own professional advancement, and his dissatisfaction with his status as a temporary employee. The panel noted that plaintiff voiced his grievances internally, at union meetings, to his supervisor, and to Human Resources, and they were specifically related to the conditions of his employment. The panel concluded that plaintiff did not engage in protected speech under the First Amendment when he complained to his supervisors about the City's hiring and use of temporary exempt employees.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

G. Whitney Leigh (argued), Gonzalez & Leigh LLP, San Francisco, California, for Plaintiff-Appellant.

Jonathan Rolnick (argued), Dennis J. Herrera, and Elizabeth Salveson, City Attorney's Office, San Francisco, California, for Defendants-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

Peter Turner, a former "temporary exempt employee" of the City and County of San Francisco (the City), appeals the dismissal with prejudice of his claims against the City for wrongful discharge. Turner contends that the district court improperly dismissed his claim under 42 U.S.C. § 1983 that the City retaliated against him for engaging in protected speech, in violation of the First Amendment. Specifically, he contends that the statements he made to his supervisors regarding the alleged unlawful hiring and use of temporary exempt employees in contravention of the San Francisco Charter (Charter) were related to a matter of "public concern," and were therefore protected by the First Amendment.

After permitting Turner to amend his complaint five times, the district court properly concluded that he had failed to state a claim under the First Amendment. Turner's communications were focused on, and driven by, a private grievance about his specific employment situation; he was not speaking as a citizen on a matter of public concern.

All other claims raised on appeal by Turner are addressed in a memorandum disposition filed concurrently with this opinion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We recount the facts as alleged in Turner's Fifth Amended Complaint, accepting them as true for purposes of the City's motion to dismiss. In 2007, the San Francisco Department of Public Works (DPW) announced an opening for a permanent "survey assistant" position. After completing examinations required for a permanent position, Turner was informed that he had been hired as a survey assistant. Turner was not informed until the day he started work that he had been hired as a "temporary exempt employee," rather than as a permanent civil service employee, despite the fact that he had interviewed and been tested for a permanent position. Turner alleges that he would not have left his other employment had he known DPW was hiring him as a temporary employee. Five other individuals were also hired as temporary exempt employees at about the same time.

Turner claims that DPW manager, Bruce Storrs (Storrs) engaged in a scheme to subvert Section 10.104 of the Charter, which authorizes the hiring of temporary employees only for special projects or professional services with limited funding. Turner alleges that, in violation of the Charter, he worked on many core department tasks, and was given extra responsibility that was incongruent with his compensation. Turner also alleges that Storrs and Robert Hanley (Hanley), the DPW Chief Surveyor, attempted to force Turner to approve maps and surveys he had not supervised. Storrs refused to promote Turner to a permanent position, and instead hired individuals who were less qualified than Turner.

Turner alleges that this hiring scheme was part of a broader plan by the City and Storrs—via DPW—to underbid survey work for other City and County agencies in order to "corner the market" on this work, and to make up the money by overcharging the public for mapping fees, while underpaying staff. Storrs acknowledged that the way he operated his portion of DPW "made the department money." Turner alleges that it was illegal to use mapping fund fees to offset the cost of low survey bids.

At staff meetings, union meetings, and face-to-face meetings with Storrs and DPW officials, Turner began "speaking out against the practice" of using temporary exempt employees "in violation of civil service rules." He also repeatedly asserted that he and other temporary exempt employees were regularly assigned to work on matters inappropriate to someone in "temporary exempt" status, and that Storrs and DPW were well aware of Turner's concerns. Turner was subsequently assigned to perform "map checking," a task Storrs acknowledged he used to punish individuals who "did not follow instructions."

Storrs and DPW blocked Turner's attempts at promotion, and "intervened to overturn a permanent surveying job offer that had been extended to Turner for work at the City's airport." Turner wrote to the human resources agent handling the position and told her that he planned to expose these policies, and to report them to whatever authority would hold Storrs and DPW responsible. Shortly thereafter, Turner was summoned to a meeting with a human resources representative, Storrs, and Storrs's supervisor, during which he was "asked hostile and intimidating questions by Storrs." Turner restated his concerns about the unlawful practices, and immediately after the meeting, Storrs informed Turner that he

would be fired. The next day, DPW Director Ed Reiskin sent Turner a letter confirming his termination.

After being fired, Turner continued to inquire about new permanent survey assistant position openings at DPW, but his applications were rejected. Turner contends that "Storrs (with the knowledge and ratification of DPW) had simply hand-picked the employees he wanted to hire without regard to objective standards or civil service rules." Turner further alleges that he "has effectively been blacklisted from obtaining future work" because Storrs and others "have deliberately put forth a false and negative reputation for [him]."

In December 2010, Turner filed his initial complaint against the City in state court, alleging numerous state causes of action. Turner subsequently amended his complaint to cure deficiencies in his numerous claims, and the City removed the case to federal court. The district court gave Turner multiple opportunities to plead one or more causes of action, and Turner eventually filed a Second, Third, Fourth, and Fifth Amended Complaint. Turner's Fifth Amended Complaint purported to allege seven causes of action (including the ones he raises on appeal). With the exception of one of Turner's claims, which the district court remanded to state court, the district court dismissed Turner's claims with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). Among other conclusions, the district court held that Turner failed to state a claim for retaliation under the First Amendment because he had not alleged facts demonstrating that he had engaged in protected speech.

Turner timely filed this appeal.

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the district court's order dismissing Turner's claims pursuant to Rule 12(b)(6). *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1018 (9th Cir. 2011).

**DISCUSSION**

Turner contends that the district court improperly dismissed his claim against the City for retaliatory termination based on protected speech. We disagree.

To survive a Rule 12(b)(6) motion to dismiss, a "plaintiff must allege enough facts to state a claim to relief that is plausible on its face." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (internal quotation marks omitted); Fed. R. Civ. P. 12(b)(6). In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party; but "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id*. (internal quotation marks omitted).

"In order to state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). A public employee's speech is protected under the First Amendment if the employee spoke "as a citizen upon matters of public concern." *Connick v. Meyers*, 461 U.S. 138, 147 (1983); *see also Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. "If employee expression relates to an issue of political, social, or other concern to the community, it may fairly be said to be of public concern." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 978 (9th Cir. 1998) (internal quotation marks omitted). However, "[a]n employee's motivation [is] relevant to the public-concern inquiry." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 715 (9th Cir. 2009) (second alteration in original) (citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999)). We have framed that inquiry with two questions: "[W]hy did the employee speak (as best as we can tell)? Does the speech 'seek to bring to light actual or potential wrongdoing or breach of public trust,' or is it animated instead by 'dissatisfaction' with one's employment situation?" *Desrochers*, 572 F.3d at 715 (quoting *Connick*, 461 U.S. at 148).

Turner contends that the content of his complaints at staff meetings, union meetings, and face-to-face meetings with DPW officials falls squarely within the bounds of "public

concern," and that the "form and context" of his speech support such a finding. *See Connick*, 461 U.S. at 147–48. Turner spoke to City officials "about what he perceived to be the unlawful hiring and use of temporary exempt employees in direct contravention of the City Charter."

We agree with the district court that, although Turner's complaint "ostensibly could invoke a matter of public concern, as it discusses civil service rules prescribed by local law, . . . Plaintiff's voiced complaint was focused on and driven by his internal grievance." In other words, Turner's complaints—while potentially significant in their implications—arose primarily out of concerns for his own professional advancement, and his dissatisfaction with his status as a temporary employee. Turner does not allege that he spoke out about excessive mapping fees or negligent survey work, but rather, only about the unlawful hiring and use of temporary employees, which he "later came to believe . . . was part of a greater illegal scheme to misappropriate . . . fund[s]."

We conclude that the form and context of Turner's speech weighs strongly against finding that First Amendment protection is warranted. When assessing these two factors, we look to the public or private nature of the speech, and to the speaker's motive. *Weeks v. Bayer*, 246 F.3d 1231, 1235 (9th Cir. 2001). In *Lambert v. Richard*, 59 F.3d 134, 136–37 (9th Cir. 1995), we held that a librarian's statement to the city council at a televised city council meeting "that the library was 'barely' functioning and that employees who dealt regularly with the public were performing 'devoid of zest, with leaden hearts and wooden hands'" constituted protected speech under *Connick*. We emphasized that Lambert "spoke as a union representative, not as an individual, and that she

described departmental problems, not private grievances." *Id*. at 137. In addition, "[t]he fact that Lambert spoke at a televised city council meeting underline[d] the public nature of the . . . controversy." *Id*. In *Desrochers*, we held that to be protected, "speech must involve issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government," but "speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." 572 F.3d at 710 (internal quotation marks and citations omitted).

Unlike the plaintiff in *Lambert*, who spoke at a televised city council meeting, Turner voiced his grievances internally—at union meetings, to his supervisor, and to Human Resources—and they were specifically related to the conditions of his employment. Turner could have pursued a complaint with the San Francisco Civil Service Commission, gone to the Board of Supervisors for the City and County of San Francisco, gone to the press, or otherwise attempted to air his concerns in a public forum. He did not do so. In addition, Turner's complaints clearly arose out of an ongoing personnel dispute with Storrs and DPW about his alleged misclassification as a temporary exempt employee rather than a permanent employee. Moreover, and also unlike the plaintiff in *Lambert*, who spoke as a union representative, there is no indication that Turner sought broad-based union action or relief on behalf of other similarly situated employees. Such "individual personnel disputes and grievances" are "generally not of public concern." *Desrochers*, 572 F.3d at 710.

Given that all three *Connick* factors weigh against Turner, we conclude that Turner did not engage in protected speech under the First Amendment when he complained to his supervisors about the City's hiring and use of temporary exempt employees.

## CONCLUSION

We affirm the decision of the district court dismissing Turner's claim pursuant to Rule 12(b)(6) for the reasons stated in this opinion and in the concurrently filed memorandum disposition. Each party shall bear its own costs on appeal.

**AFFIRMED.**