**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHANA BECERRA, on behalf of herself, all others similarly situated, and the general public,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>DR PEPPER/SEVEN UP, INC.,<br>*Defendant-Appellee.* | No. 18-16721<br><br>D.C. No.<br>3:17-cv-05921-WHO<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted December 4, 2019
San Francisco, California

Filed December 30, 2019

Before: Eugene E. Siler,[*] Jay S. Bybee,
and Ryan D. Nelson, Circuit Judges.

Opinion by Judge Bybee

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### California Consumer Fraud

The panel affirmed the district court's dismissal of plaintiff's third amended complaint alleging that Dr Pepper/Seven Up, Inc. violated various California consumer-fraud laws by branding Diet Dr Pepper using the word "diet."

The panel held that the allegations in the complaint failed to sufficiently allege that reasonable consumers read the word "diet" in a soft drink's brand name to promise weight loss, healthy weight management, or other health benefits. The panel held that diet soft drinks are common in the marketplace and the prevalent understanding of the term in that context is that the "diet" version of a soft drink has fewer calories than its "regular" counterpart. Just because some consumers may unreasonably interpret the term differently does not render the use of "diet" in a soda's brand name false or deceptive. Accordingly, because plaintiff had not sufficiently alleged that Diet Dr Pepper's labeling was false or misleading, dismissal was proper.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Jack Fitzgerald (argued), Trevor M. Flynn, and Melanie Persinger, The Law Office of Jack Fitzgerald PC, San Diego, California; Andrew Sacks and John Weston, Sacks Weston Diamond LLC, Philadelphia, Pennsylvania; for Plaintiff-Appellant.

Evan A. Young (argued), Baker Botts L.L.P., Austin, Texas; Van H. Beckwith, Baker Botts L.L.P., Dallas, Texas; Ariel D. House, Baker Botts L.L.P., San Francisco, California; for Defendant-Appellee.

**OPINION**

BYBEE, Circuit Judge:

Appellant Shana Becerra sued appellee Dr Pepper/Seven Up, Inc. (Dr Pepper), alleging that Dr Pepper violated various California consumer-fraud laws by branding Diet Dr Pepper using the word "diet." After the district court dismissed her third amended complaint with prejudice, Becerra appealed. We affirm the judgment.

I

In October 2017, Becerra filed her initial complaint, alleging that Dr Pepper's naming and marketing of Diet Dr Pepper violated various provisions of California state law. She then amended the initial complaint to correct the name of the defendant, and Dr Pepper moved to dismiss the amended complaint. Becerra again amended her complaint in response to the motion to dismiss. Becerra's second amended

complaint alleged that the label "diet" misled Diet Dr Pepper consumers by promising that the product would "assist in weight loss" or at least "not cause weight gain." Becerra relied on several studies to allege that aspartame, the artificial sweetener used in Diet Dr Pepper, "is likely to cause weight gain" and "poses no benefit for weight loss," rendering the promise allegedly inherent in the word "diet" false and misleading. The second amended complaint raised five causes of action: (1) violations of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.; (2) violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.; (3) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; (4) breach of express warranty in violation of Cal. Com. Code § 2313(1); and (5) breach of the implied warranty of merchantability in violation of Cal. Com. Code § 2314.

Dr Pepper moved to dismiss the second-amended complaint and the district court granted the motion without prejudice, concluding that Becerra failed to sufficiently allege that reasonable consumers would understand "diet" in a soft drink's brand name to promise weight loss and that, even if she had, the scientific studies she cited failed to support her allegations that this promise was false. Becerra amended her complaint and Dr Pepper again moved to dismiss.

Becerra's third amended complaint—the operative complaint in this case—contains the same general allegations as her second amended complaint, but adds several categories of allegations in an attempt to correct deficiencies the district court identified. First, she cited dictionary definitions to support her allegation that reasonable consumers understand the word "diet" to promise assistance in weight loss. Second,

she included references to print and television advertisements as further support of the allegation that consumers understand 'diet" soft drinks to offer certain health benefits. Third, she cited two online articles from the American Beverage Association (ABA) to further reinforce her reading of the word "diet." Finally, she summarized the results of a survey of California and national consumers, which she contends is proof that the majority of soft-drink consumers believe "diet" soft drinks will help them lose or maintain their weight.

After a hearing, the district court granted Dr Pepper's third motion to dismiss. The district court found that no reasonable consumer would believe that the word "diet" in a soft drink's brand name promises weight loss or healthy weight management and, even if a reasonable consumer would believe that, Becerra had not sufficiently alleged that any such promise was false because of insufficient allegations that aspartame consumption causes weight gain. The district court dismissed Becerra's breach-of-warranty claims for the same reasons.[1] Finally, because Becerra's counsel agreed at the hearing that there was nothing to add to the complaint, the district court dismissed the complaint without leave to amend.[2] Becerra filed a timely appeal.

---

[1] Becerra does not challenge the dismissal of these claims on appeal.

[2] Becerra's suit against Dr. Pepper in California was part of a series of suits brought against soda manufacturers. Becerra also filed suit in California against Coca-Cola. We dismiss that suit on jurisdictional grounds in a memorandum decision filed concurrently with this opinion. The Second Circuit recently affirmed dismissal of complaints similar to Becerra's that were filed under New York's consumer-fraud laws. *Geffner v. Coca-Cola Co.*, 928 F.3d 198 (2d Cir. 2019) (per curiam); *Excevarria v. Dr. Pepper Snapple Grp., Inc.*, 764 F. App'x 108 (2d Cir. 2019); *Manuel v. Pepsi-Cola Co.*, 763 F. App'x 108 (2d Cir. 2019).

II

We have jurisdiction under 28 U.S.C. § 1291. Dismissal of a complaint for failure to state a claim is reviewed de novo. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016). We accept "all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Id.* (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)) (internal quotation marks omitted). Dismissal is appropriate if the plaintiff has not "allege[d] enough facts to state a claim to relief that is plausible on its face." *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (internal quotation marks and citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake." This includes "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). In fraud cases, plaintiffs "must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994). The allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

III

Becerra's claims under the California consumer-protection statutes are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under this standard, Becerra must "show that members of the public are likely to be deceived." *Id.* (internal quotation marks and citation omitted); *see also Bank of West v. Superior Court*, 833 P.2d 545, 553 (Cal. 1992). This requires more than a mere possibility that Diet Dr Pepper's label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. Ct. App. 2003); *see id.* at 492 (rejecting a "least sophisticated consumer" standard). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

Becerra's consumer-fraud claims center on two primary allegations: first, the word "diet" in Diet Dr Pepper's brand name promises that the product will assist in weight loss or healthy weight management and, second, that promise is false because aspartame causes weight gain. Because Becerra's claims depend on both allegations being true, she must sufficiently allege both for her claims to survive. We will affirm the judgment on the basis of Becerra's first allegation and not reach the second.

Becerra alleges that, based on Diet Dr Pepper's use of the term "diet," "consumers reasonably believe that drinking Diet Dr Pepper will assist in weight loss or healthy weight management." She contends that the use of "diet" in Diet

Dr Pepper's brand name contains an "implicit promise [] that, because Diet Dr Pepper does not contain sugar or calories, it will assist in weight loss, or at least healthy weight management . . . and that it is useful for those who must limit their sugar intakes."

We will begin with the observation that Becerra's citations to dictionary definitions of the word "diet" are citations to the word when used as a verb or noun, as in "he is dieting" or "she is starting a diet." But, as Dr Pepper and the district court noted, "diet" in Diet Dr Pepper is either an adjective or a proper noun, and that puts the word in a different light. Becerra's selective quotations omit the definitions of "diet" as an adjective and the frequent usage of "diet soft drinks" as the primary example of the word's usage in that context. For example, the *Merriam Webster Dictionary* defines the adjective "diet" as "reduced in or free from calories[—]a diet soft drink." Diet, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/diet. The other dictionaries cited by Dr Pepper have the same general definition of "diet" in this context. *See, e.g.*, Diet, AMERICAN HERITAGE DICTIONARY, https://www.ahdictionary.com/word/search.html?q=diet ("Having fewer calories . . . Sweetened with a noncaloric sugar substitute"); Diet, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/diet ("(of food or drink) containing much less sugar than usual and often sweetened artificially, or containing less fat than usual: diet soda"); Diet, COLLINS DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/diet ("Diet drinks or foods have been specially produced so that they do not contain many calories . . . sugar-free diet drinks").

When considering the term in its proper context, no reasonable consumer would assume that Diet Dr Pepper's use of the term "diet" promises weight loss or management. In context, the use of "diet" in a soft drink's brand name is understood as a relative claim about the calorie content of that soft drink compared to the same brand's "regular" (full-caloric) option. *See Geffner*, 928 F.3d at 200 ("the 'diet' label refers specifically to the drink's low calorie content; it does not convey a more general weight loss promise" (footnote omitted)). And considering "diet" as a proper noun—as in Diet Dr Pepper—does not further Becerra's argument. In common usage, consumers know that Diet Dr Pepper is a different product from Dr Pepper—different not only in name, but in packaging and, importantly, taste.

Becerra argues that, regardless of the common *understanding* of the word, dismissal was still improper because she alleged a plausible *misunderstanding* of the word. But we have previously affirmed dismissal of claims based on similar unreasonable assumptions. In *Ebner*, the plaintiff claimed that a net-weight statement on packaging for a lip balm was deceptive because the design of the dispenser left twenty-five percent of the product inaccessible. 838 F.3d at 961. We held that similar dispensers were "commonplace in the market," such that a reasonable consumer "understands the general mechanics of these dispenser tubes and further understands that some product may be left in the tube" even when pushed all the way up. *Id.* at 965. "A rational consumer would not simply assume that the tube contains no further product" when he or she could see the remaining product in the tube. *Id.* at 966. And even if *some* consumers would make that assumption, the packaging was not deceptive just because some consumers could unreasonably misunderstand the product. *Id.*

The same is true here. Diet soft drinks are common in the marketplace and the prevalent understanding of the term in that context is that the "diet" version of a soft drink has fewer calories than its "regular" counterpart. Just because some consumers may unreasonably interpret the term differently does not render the use of "diet" in a soda's brand name false or deceptive. *See Lavie*, 129 Cal. Rptr. 2d at 495.

Aside from dictionary definitions of "diet," Becerra also pointed to Diet Dr Pepper's advertisements, online articles from the ABA, and the results of a consumer survey to support her allegations that reasonable consumers understand the word "diet" to contain an implicit weight-loss promise. Becerra first cites a host of Dr Pepper print and television advertisements dating back to the 1970s. But these ads are either irrelevant to her claims,[3] or make no reference to weight loss or other health benefits. The statements in the ads are mainly comparative—that is, they imply that "diet" drinks often do not taste like their "regular" counterparts, but that Diet Dr Pepper tastes more like its "regular" counterpart than other diet soft drinks do. This further supports the conclusion that reasonable consumers understand "diet" in this context to be a relative term and not a promise of weight loss or other health benefits. Becerra also alleges that the use of attractive, fit models in the ads implies that Diet Dr Pepper will help its consumers achieve those bodies. But, as the Second Circuit pointed out when considering a nearly identical complaint, "[t]he use of physically fit and attractive models using and enjoying advertised products is so ubiquitous that it cannot be

---

[3] Her claim is premised on the allegation that the word "diet" contains certain inherent promises. Ads for "Sugar Free Dr Pepper" (the soda's name before it was rebranded) do nothing to support her claims that the name "Diet Dr Pepper" is false or misleading.

reasonably understood to convey any specific meaning at all." *Geffner*, 928 F.3d at 200.

Becerra also cites two 2014 American Beverage Association blog posts that she claims support her allegation that reasonable consumers understand "diet" to promise weight loss. But the content of these articles emphasize that other lifestyle changes beyond merely drinking diet soft drinks are necessary to see weight-loss results.

Finally, Becerra's third amended complaint summarizes the results of a 2018 survey of 400 California soft-drink consumers and 400 nationwide soft-drink consumers. Becerra alleges that this survey "confirms that the vast majority of consumers expect a diet soft drink to either help them lose weight, or help maintain or not affect their weight."

As the district court noted, it is difficult to tell what questions the survey asked to reach its conclusions, but it appears to have asked four questions to gauge consumer expectations of diet soft drinks related to one's weight. Of the California consumers, only 12.5 percent expected diet soft drinks to help them lose weight (compared to 15 percent nationwide), while 63.3 percent expected diet soft drinks to help maintain/not affect their weight (compared to 62 percent nationwide).

The survey cannot, on its own, salvage Becerra's claim. Although we must accept the allegations surrounding the survey as true at this stage of the litigation, a reasonable consumer would still understand "diet" in this context to be a relative claim about the calorie or sugar content of the product. The survey does not address this understanding or the equally reasonable understanding that consuming low-

calorie products will impact one's weight only to the extent that weight loss relies on consuming fewer calories overall. At bottom, the survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word "diet" to mean or make plausible the allegation that reasonable consumers are misled by the term "diet."

Taken together, the allegations in the complaint fail to sufficiently allege that reasonable consumers read the word "diet" in a soft drink's brand name to promise weight loss, healthy weight management, or other health benefits. Without this piece of the puzzle, Becerra's consumer-fraud claims fail.[4]

IV

Becerra has failed to sufficiently allege that reasonable consumers understand the word "diet" in Diet Dr Pepper's brand name to promise weight loss, healthy weight management, or other health benefits. Accordingly, Becerra has not sufficiently alleged that Diet Dr Pepper's labeling is false or misleading and dismissal was therefore proper.

**AFFIRMED**.

---

[4] Becerra also argues that the district court failed to account for her deceptive-omission theory of recovery. But this claim fails for the same reason her false-and-misleading theory does. Because she has failed to sufficiently allege a weight-loss promise from Dr Pepper, there was nothing deceptive about Dr Pepper not disclosing to consumers the alleged possibility of weight gain.