NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHANSUE KANG, an individual, and on behalf of other members of the general public similarly situated,<br><br>       Plaintiff-Appellant,<br><br> v.<br><br>P.F. CHANG'S CHINA BISTRO, INC., an Arizona Corporation; DOES, 1-100, inclusive,<br><br>       Defendants-Appellees. | No.   20-55138<br><br>D.C. No.<br>5:19-cv-02252-PA-SP<br><br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted January 11, 2021
Pasadena, California

Before: WATFORD, FRIEDLAND, and BENNETT, Circuit Judges.
Dissent by Judge BENNETT

     To proceed past the pleading stage on his claims under California's Unfair

Competition Law ("UCL"), False Advertising Law, and Consumer Legal

Remedies Act, plaintiff Chansue Kang must plausibly allege that reasonable

---

     * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

consumers "are likely to be deceived" by defendant's use of the term "krab mix" on its restaurant menus. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The district court concluded that Kang's allegations were implausible on their face and accordingly granted defendant's motion to dismiss. We reach a different conclusion and therefore reverse and remand.[1]

As we observed in *Williams*, determining whether reasonable consumers are likely to be deceived "will usually be a question of fact not appropriate for decision on" a motion to dismiss. *Id.* That is the case here. Kang alleges that defendant's inclusion of the term "krab mix" in the ingredient list for certain of its sushi rolls is likely to deceive reasonable consumers into thinking that the sushi rolls contain at least some real crab meat when in fact they contain none. That allegation ultimately may not be borne out by the evidence, but it is at least plausible that reasonable consumers would be deceived in this way. We certainly agree with defendant that reasonable consumers confronted with the fanciful spelling of "krab" on the menu would not assume they were purchasing a sushi roll with 100% real crab meat. But the menu uses the term "krab mix," and Kang's allegation is

---

[1] Although Kang's express warranty claim and his claim under the unfair practices prong of the UCL are subject to slightly different standards, the district court's dismissal of these claims appeared to be predicated on the same implausibility conclusion that dictated its dismissal of Kang's first three claims. We therefore reverse and remand on these claims as well so that the district court may reconsider them in light of our holding.

that reasonable consumers would understand that term to mean the item contains a mixture of imitation and real crab. Because the term "krab mix" lacks any commonly understood contrary meaning, we cannot say, in the absence of evidence bearing on the issue, that Kang's allegation is implausible on its face.[2]

This case is distinguishable from the cases on which defendant relies. In *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019), we held as a matter of law that reasonable consumers would not be misled into thinking that drinking a beverage called "Diet Dr Pepper" would assist them in losing weight, precisely because use of the word "diet" in a soft drink's name is widely understood to signify nothing more than that the beverage "has fewer calories than its 'regular' counterpart." *Id.* at 1230. Here, as noted, there is no prevailing understanding that listing "krab mix" as an ingredient in a sushi roll signifies that the item contains no real crab meat. And the fact that the fanciful spelling of "krab" appears in the ingredient list, rather than in the menu item's name, distinguishes this case from *McKinnis v. Kellogg USA*, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007), where the court held that the fanciful spelling of "Froot" in "Froot Loops" was not misleading in part because it "appear[ed] in the

---

[2] We also cannot agree with the district court that, as a matter of law, the relative prices of the sushi rolls at issue would prevent a reasonable consumer from assuming they contained some real crab. Similar to the meaning of the term "krab mix," this issue is not one that can be resolved at the motion to dismiss stage.

trademarked name of the cereal, not . . . as a description of the actual ingredients." *Id.* at *4.

Defendant argues that reasonable consumers would not be misled by use of the term "krab mix" in the ingredient list for sushi rolls because other items on the menu include "crab" among their ingredients. That argument does not carry the day, at least at the motion to dismiss stage, in light of our decision in *Williams*. There, the packaging of children's "Fruit Juice Snacks" visually depicted various fruits and represented that the snacks were made with "fruit juice and other all natural ingredients." *Williams*, 552 F.3d at 939. We concluded that these representations could plausibly deceive reasonable consumers into believing that the snacks contained the depicted fruits or their juices and that the snacks' ingredients were all natural. We further held that the packaging could plausibly deceive reasonable consumers even though the ingredient list elsewhere on the packaging disclosed the actual ingredients, since reasonable consumers might not "look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print." *Id.* Similarly here, we cannot assume that reasonable consumers would necessarily look past the term "krab mix" in the item they were ordering to notice that "crab" appeared as an ingredient in other items on the same menu.

Finally, for essentially the same reason, we do not think our decision in *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995), supports the district court's decision. In that case, the "qualifying language" that dispelled the alleged deception "appear[ed] immediately next to the representations it qualifie[d] and no reasonable reader could ignore it." *Id.* at 289. Here, by contrast, the word "crab" in the ingredient lists of other menu items does not represent "qualifying language," and even if it did, that language does not appear immediately next to the representation that it purportedly qualifies.

Defendant raises additional grounds for dismissal of certain of Kang's claims under state law. Because the district court did not address any of those arguments in its decision, we do not reach them here.

**REVERSED and REMANDED.**

FILED

FEB 9 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BENNETT, Circuit Judge, dissenting:

I respectfully dissent, as I do not believe Plaintiffs have alleged any plausible claims. Plaintiffs' entire case rests on the term "krab mix." Class representative Chansue Kang bought sushi rolls on April 12, 2019, according to his opening brief. His complaint contends he bought the appetizer because he read and relied on the "false and misleading" menu description "krab mix." Kang claims that he believed he was getting crab. He further claims that he wouldn't have bought the "krab" had he known "krab" wasn't crab. Thus, he tells us he was "deceived." His complaint states that on *April 29, 2019*, he gave pre-suit notice by certified mail. So, in a seventeen-day period: (1) Plaintiff was unfairly bamboozled by P.F. Chang's into thinking "krab" was crab; (2) Plaintiff discovered the horrible truth that "krab" wasn't crab; (3) Plaintiff found a crusading attorney; (4) that attorney somehow confirmed the horrible truth; and (5) that attorney drafted and mailed a pre-suit letter. Remarkable diligence!

The standard for misrepresentation is not whether the "least sophisticated" or "most gullible" consumer would be misled by the term "krab mix," but whether a significant portion of ordinary consumers, acting reasonably, would think "krab mix" contains real crab meat. *See Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr.

1

2d 486, 508 (Ct. App. 2003). The majority fails to give the ordinary California consumer enough (or any) credit.

"Krab" with a "k" should be a dead giveaway. Consumers understand that fanciful spellings materially change the meaning of a word. For instance, nobody reasonably thinks that "Froot Loops" contains fruit, and courts have had no trouble dismissing lawsuits claiming otherwise. *See Videtto v. Kellogg USA*, 2009 WL 1439086, at *3 (E.D. Cal. May 21, 2009); *McKinnis v. Kellogg USA*, 2007 WL 4766060, at *4–5 (C.D. Cal. Sept. 19, 2007). In fact, the whole point of the intentional misspelling is to make "humorous use . . . of words having the same or nearly the same sound but different meanings." *Pun*, Webster's Third New Int'l Dictionary (1986). And this kind of advertising is now commonplace in the food industry, from "cavi-art" (which is not caviar) to "tofurky" (which is not turkey). It is implausible that an ordinary consumer, with ordinary common sense, would think that "krab" means crab meat, and on that point the majority appears to agree. Majority at 2.

The majority nonetheless insists that a reasonable consumer might interpret "krab mix" to mean "a mixture of imitation and real crab." Majority at 2–3. But nothing about "krab mix" suggests that the sushi rolls will contain real crab. "Krab" cannot plausibly be mistaken for real crab, *see supra*, and "mix" signifies only a mixture of ingredients. Thus, "krab mix" might reasonably be understood to mean

2

a mixture of ingredients constituting "krab," or perhaps a mixture of "krab" and other ingredients. Consumers may be unsure about what exactly those ingredients are, but that doesn't make it reasonable to assume one of those ingredients will be crab. *See Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 117–18 (Ct. App. 2011) (finding that no reasonable consumer would think a green waterdrop icon signified the product's environmental superiority, even though "[d]efendants obviously put the green drop on the label for . . . a 'marketing' purpose"). Such "wishful thinking on the plaintiff's part" does not suffice to make a plausible claim. *Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683, 691 (Ct. App. 2018).[1]

Context matters too, and it does not support the majority's conclusion. P.F. Chang's menu, on the same page as the "krab mix," lists other items containing "crab," both as an ingredient and in the item name. The reasonable consumer does not lack common sense—when confronted with both "krab mix" and "crab" on the same menu, such a consumer knows that one is not the other. Indeed, another dead giveaway is that the ingredient is called "krab mix" and not "*crab* mix."

---

[1] The majority notes that "there is no prevailing understanding that listing 'krab mix' as an ingredient in a sushi roll signifies that the item contains no real crab meat." Majority at 3. That is a necessary condition for Plaintiffs' claim to survive, but not a sufficient one. "Krab mix" is not a disclaimer that the sushi roll will contain "0% crab" or "no shellfish," so of course Plaintiffs' supposed expectation of "krab mixed with crab" is not contrary to the phrase "krab mix." But that does not make such an expectation *reasonable*—Plaintiffs can hold many expectations that are not contrary to the representation, but only those that reflect common sense qualify as reasonable ones. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019).

3

The majority contends, however, that a reasonable consumer would not necessarily look at the other items on the menu, relying on *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008). Majority at 4. But *Williams* concerned the ingredient list on product packaging, which is nothing like a restaurant menu. The ingredient list on product packaging exists to satisfy regulatory requirements; it is almost always tucked away on the back or side of the product label; and it is usually expressed in very small print. *See Williams*, 552 F.3d at 939, 941. That is why reasonable consumers might not read that portion of the product packaging. *See id.* at 939–40. The same cannot be said for items or ingredients on a menu that are placed on equal footing with, and on the same page as, the alleged misrepresentation. A hasty diner, acting unreasonably, might fixate on sushi rolls with "krab mix" to the exclusion of all other items on the menu. But that approach to ordering food doesn't bear any resemblance to the regular dining experience of consumers.

Thus, I would affirm the district court's dismissal of Plaintiffs' misrepresentation and breach of express warranty claims. I would also affirm the district court's implicit dismissal of Plaintiffs' claim under the unfair practices prong of California's Unfair Competition Law ("UCL"). Although this claim is premised on the same "krab mix" representation, the unfairness prong is an independent basis for relief against conduct that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204,

4

1214 (9th Cir. 2020) (citation omitted).[2]  P.F. Chang's description of its sushi rolls as containing "krab mix" does not plausibly rise to the level of "immoral" or "oppressive" conduct.  *See Bardin v. DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634, 644 (Ct. App. 2006) (finding that a car manufacturer's failure to mention that it used cheap steel rather than cast iron in its vehicles was not immoral).  Nor is the use of "krab mix" substantially (or insubstantially) injurious to consumers.

The real harm here comes from allowing such implausible claims as Plaintiffs' to proceed, which will increase costs to all consumers.  As the district court got it exactly right, I respectfully dissent.

---

[2] The UCL's unfairness prong prohibits other types of unfair conduct as well, *see CVS Pharmacy*, 982 F.3d at 1214–15, but Plaintiffs have alleged only that P.F. Chang's conduct was "unethical, oppressive, unscrupulous, and/or substantially injurious to consumers."